# United States District Court
# Central District of California

| | |
|---|---|
| FELIPE GONZALEZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>J.P. MORGAN CHASE BANK N.A., et al.,<br><br>　　　　Defendants. | Case № 2:17-CV-09310-ODW (ASx)<br><br>**ORDER GRANTING DEFENDANT RUSHMORE LOAN MANAGEMENT SERVICES' MOTION TO DISMISS FIRST AMENDED COMPLAINT [82]** |

## I.　INTRODUCTION

This matter comes before the Court on Defendant Rushmore Loan Management Services' Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion"). (ECF No. 82.) For the reasons that follow, the Court GRANTS Defendant's Motion.[1]

## II.　FACTUAL BACKGROUND

The Court previously set forth the pertinent facts in its October 8, 2019 Order ("October Order"), (ECF No. 85), granting motions to dismiss filed by Defendants JPMorgan Chase Bank, N.A. ("Chase"), Federal National Mortgage Association's ("Fannie Mae"), and NDeX West LCC ("NDeX"); thus, the Court shall only repeat

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

the facts relevant to Defendant Rushmore Loan Management Services' ("Rushmore" or "Defendant") Motion here.

On July 20, 2007, Plaintiff Felipe Gonzalez ("Gonzalez") purchased the real property located at 14229 Tiara Street, Los Angeles, California 91410 ("Property") and signed a deed of trust in the amount of $387,750.00 with Chase ("Loan"). (First Amended Complaint ("FAC") ¶ 11, ECF No. 60.) In September 2010, Chase sold the Property to Fannie Mae in a foreclosure sale. (FAC ¶ 24.) In the summer of 2015, Chase transferred its loan servicing duties of Gonzalez's home mortgage loan to Rushmore. (FAC ¶ 31.) Gonzalez alleges "Rushmore [then placed] a lock box on [his] home" and informed him that the lockbox would remain since "[Rushmore] had rights to the home" ("2015 lockbox incident"). (FAC ¶ 32.) Gonzalez further alleges that it was unclear who was overseeing the Loan at the time because although Rushmore began to service the Loan in 2015, Gonzalez also "continued to be solicited for [loan] modifications from Chase." (FAC ¶¶ 30–31.)

In February 2016, Fannie Mae assigned the deed of trust to a third party. (*See* Defs.' Req. for Judicial Notice ("RJN"), Ex. D Assignment of Deed of Trust ("2016 Assignment"), ECF No. 65-4; FAC ¶ 31.) Thereafter, in May 2016, Gonzalez alleges that "two women appeared at the [P]roperty, claim[ing] to represent the bank," and demanded entry, which Gonzalez denied ("2016 bank representative incident"). (FAC ¶ 33.) Gonzalez alleges the two individuals trespassed anyway and told Gonzalez "he could not make changes to the [P]roperty." (*Id.*)

On September 20, 2018, Gonzalez filed his First Amended Complaint ("FAC") against Defendants Chase, Fannie Mae, NDeX, and Rushmore. (*See generally* FAC.) Gonzalez alleges that each of his thirteen cause of actions are tied to Defendants' mismanagement of his Loan and violations of his rights in the Property. (FAC ¶¶ 10-13, 37–132.) On October 8, 2019, the Court granted motions to dismiss filed by Chase, Fannie Mae, and NDeX on res judicata grounds and because Gonzalez failed to plead sufficient facts to show Chase, Fannie Mae, or NDeX held a continued

interest in the Loan or the Property after 2015 and 2016. The Court now considers Defendant Rushmore's motion to dismiss.

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly

denied . . . if amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

As the Court discussed in its October Order, while Gonzalez's claims arising from alleged incidents dating between 2007 and 2010 involving the Loan and the Property are barred by res judicata, Gonzalez's claims arising from the 2015 lockbox incident and the 2016 bank representative incident are not similarly barred. Still, as the Court previously determined, Gonzalez fails to sufficiently allege that Rushmore acted as an agent of Chase and Fannie Mae. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (affirming dismissal where complaint merely asserted that one defendant was agent of another defendant without any stated factual basis).

Therefore, in order to maintain an action against Rushmore, Gonzalez must allege sufficient facts to hold Rushmore directly liable for his alleged injuries. Rushmore moves to dismiss Gonzalez's nine claims against it, primarily arguing Gonzalez's allegations lack facial plausibility because they depend on unsupported facts and unfounded legal conclusions. For the reasons that follow, the Court agrees that Gonzalez's FAC fails to allege a cognizable legal theory based on the 2015 and 2016 incidents. Accordingly, the Court dismisses all claims against Rushmore.

### A. Quiet Title and Slander of Title (Sixth Cause of Action)

Gonzalez's sixth cause of action seeks quiet title, alleging that no Defendant holds any proper interest in the Property. (FAC ¶¶ 93-97.)

A complaint to quiet title must be verified and include: (1) a description of the property; (2) the title of the plaintiff and the basis of the title; (3) the adverse claims to the title; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff. California Code of Civil Procedure ("Cal. Civ. Proc. Code") § 761.020. A verified complaint is a signed complaint with the plaintiff's oath or affidavit stating that, to the best of his or her knowledge, all information in the complaint is true and correct. *Waldrop v. Wells Fargo Bank, N.A.*,

No. ED 16-cv-413-DMG (SPx), 2016 WL 7626145, at *9 (C.D. Cal. Oct. 11, 2016). In California, "a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1032 (N.D. Cal. 2010) (internal citation and quotation marks omitted). "Thus, to maintain a quiet title claim, a plaintiff is required to allege tender of the proceeds of the loan at the pleading stage." *Id.* (alteration, internal citation, and quotation marks omitted). "The cloud upon [a borrower's] title persists until the debt is paid." *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974).

Here, Gonzalez did not file a verified complaint, nor did Gonzalez allege that he has tendered, or offered to tender, the full amount he has borrowed. Omissions such as these are fatal to a quiet title claim. *See Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1177 (E.D. Cal. 2010) ("[A] quiet title claim is doomed in the absence of [plaintiff's] tender of amounts owed."). Thus, the Court dismisses Gonzalez's quiet title claim without leave to amend.

Gonzalez also asserts a slander of title claim, alleging "Chase's original filings and continued filings regarding the [P]roperty, in addition to the public records created for the [Notice of Default ("NOD") and Notice of Sale ("NOS")] have slandered title." (FAC ¶ 95.) Gonzalez further alleges that "[w]hen Rushmore took over servicing they believed he was post foreclosure as they put a lock box on the home to allow investors to enter the [P]roperty." (FAC ¶ 97.)

Under California law, a claim for slander of title contains the following elements: "there must be a publication; the publication must be without privilege or justification and thus with malice, express or implied; it must be false, either knowingly so or made without regard to its truthfulness; and it must cause direct and immediate pecuniary loss." *Howard v. Schaniel*, 113 Cal. App. 3d 256, 263 (1980); *see Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (2009).

Here, Gonzalez provides no specific facts tying Rushmore to any published

documents resulting in monetary damages. Instead, Gonzalez vaguely argues that "[a]ny actions [Rushmore has] taken to cause the publication of information suggesting that plaintiff is in default on his loan or that his [P]roperty is subject to foreclosure constitutes a slander on plaintiff's title." (*See* Gonzalez's Opp'n to Rushmore's Motion 6 ("Opp'n"), ECF No. 83.) With no factual support, the FAC's allegations are conclusory and fail to state a cognizable claim. Accordingly, Gonzalez's slander of title claim is dismissed without leave to amend.

### B. Violation of TILA, RESPA, and HOEPA (Seventh Cause of Action)

The Truth in Lending Act ("TILA") "requires creditors . . . to provide borrowers with clear and accurate disclosures of [the] terms [of their loan, including] . . . finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). The Home Ownership and Equity Protection Act ("HOEPA") is an amendment of TILA and similarly prohibits creditors from "extending credit to consumers under mortgages referred to in section [1602(aa)] based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment." 15 U.S.C. § 1639(h). Although section 1602(aa) covers consumer credit transactions secured by a consumer's principal dwelling, it expressly excludes from HOEPA coverage of a "residential mortgage transaction." 15 U.S.C. § 1602(aa); 12 C.F.R. § 226.23(f)(1). Residential mortgage transactions are defined by statute as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(x). Gonzalez does not specify if he is requesting damages, rescission or both under TILA and HOEPA.

Here, the TILA disclosure requirement was triggered in 2007 when Gonzalez first obtained his mortgage. Once a mortgage contract has been signed, there are only

three circumstances that require new TILA disclosures: refinance, assumption, or variable interest rate adjustment. Gonzalez does not allege that one of these three circumstances applies here; rather, Gonzalez argues that "Rushmore may be liable for Chase's actions as a successor in interest to Chase." (Opp'n 6.) But the case Gonzalez relies on to support his theory of successor liability—*Daniell v. Riverside Partners I, L.P.*—clearly stands for the opposite proposition. *Daniell*, 206 Cal. App. 4th 1292, 1300 (2012) (citations omitted) ("The general rule of successor nonliability provides that where a corporation purchases, or otherwise acquires by transfer, the assets of another corporation, the acquiring corporation does not assume the selling corporation's debts and liabilities.") And Gonzalez offers no argument that an exceptional circumstance requires the Court to impose successor liability on Rushmore. Additionally, Gonzalez's HOEPA claim fails on the merits because he obtained a mortgage from Chase to finance his purchase of the Property. (FAC ¶ 11.) The Loan was a transaction upon which a deed of trust was recorded, which qualifies as a "residential mortgage transaction," as defined by § 1602(x), and is exempt from HOEPA. *See* 15 U.S.C. § 1602(aa); 12 C.F.R. § 226.23(f)(1); *Kennedy v. World Sav. Bank, FSB*, No. 14-cv-05516-JSC, 2015 WL 1814634, at *11 (N.D. Cal. Apr. 21, 2015). Therefore, Gonzalez's TILA and HOEPA claims must be dismissed without leave to amend.

Moreover, the Real Estate Settlement Procedures Act ("RESPA") requires lenders and servicers to make certain communications to consumers during the mortgage lending and modification process. *See* 12 U.S.C. § 2601 *et seq*. This includes providing consumers with "notice of transfer for any assignment, sale, or transfer of the servicing of the mortgage loan," 12 C.F.R. § 1024.33(b)(1), and "notice in writing" of the "servicer's determination of which loss mitigation options . . . it will offer to the borrower. . . ." 12 C.F.R. § 1024.41(c). Loan servicers are also required to provide written responses to a borrower's Qualified Written Request ("QWR") for information including the identity or contact information of the owner of the loan. *See*

12 U.S.C. § 2605(k)(1)(D).

Here, Gonzalez alleges that "[i]n 2014, and 2015 [he] continued to be solicited for modifications from Chase . . . [which] were filled out and denied." (FAC ¶ 30.) Gonzalez further alleges in opposition to the Motion that Rushmore violated RESPA by proceeding "with foreclosure activities in 2015" although "his modification application was still pending in 2015." (Opp'n 6.) However, such conclusory allegations do not suffice. Gonzalez provides no specific facts regarding Rushmore's alleged RESPA violation making it unclear from the FAC whether Gonzalez's RESPA claim is based on Rushmore's supposed failure to notify him of the mortgage transfer, to process a complete loan modification application, or to respond to a written request for information. Gonzalez also fails to allege any actual damages stemming from Rushmore's alleged RESPA violation. Accordingly, the Court dismisses Gonzalez's RESPA claim without leave to amend.

## C. Intentional Infliction of Emotional Distress (Eighth Cause of Action) and Negligent Infliction of Emotional Distress (Ninth Cause of Action)

Rushmore argues, and the Court agrees, that Gonzalez's claims for intentional infliction of emotional distress ("IIED") or negligent infliction of emotional distress ("NIED") are time barred. (Mot. 18–19.) As a preliminary matter, these claims are subject to a two-year statute of limitations under Cal. Civ. Proc. Code § 335.1. As mentioned above, Gonzalez alleges the lockbox incident occurred in the summer of 2015 but he filed this suit on December 31, 2017—more than two years after the lockbox incident allegedly occurred. (FAC ¶ 32.) Thus, any IIED or NIED claims based on the lockbox incident are time-barred. *See* Cal. Civ. Proc. Code § 335.1

Therefore, the Motion is granted without leave to amend as to Gonzalez's claim for IIED or NIED.

## D. Violation of HBOR (Tenth Cause of Action)

The California Homeowner Bill of Rights ("HBOR") requires that a mortgage servicer satisfy certain requirements before recording a notice of default. *See* Cal.

Civ. Proc. Code § 2923.5. These requirements include contacting the borrower in person or by telephone to assess the borrower's financial situation and to explore alternatives to foreclosure. A notice of default recorded under section 2923.5 must include a declaration that the mortgage servicer "has contacted the borrower, has tried with due diligence to contact the borrower . . . or that no contact was required because the individual did not meet the definition of 'borrower.'" Cal. Civ. Proc. Code § 2923.5(b).

Gonzalez argues that "[D]efendants, including Rushmore, failed to comply with section 2923.5 by not contacting him or sending him information as required by law, prior to recording the NOD and the [Notice of Trustee Sale ("NOTS")]." (Opp'n 7:8-11.) Gonzalez alleges that Chase recorded a Notice of Default on January 13, 2009, a Notice of Trustee's Sale on August 9, 2010, a Notice of Sale on September 27, 2010, and an additional Notice of Sale on October 6, 2010. (FAC ¶¶ 23, 27, 29, 44.) However, Rushmore began servicing Gonzalez's loan in 2015—long after these documents were recorded—and thus cannot be held liable for failing to communicate with Gonzalez regarding foreclosure alternatives prior to their recording. Gonzalez vaguely alleges that "Rushmore may have filed a NOD" but Gonzalez is "unaware as he has not been noticed nor has his counsel." (FAC ¶ 36.) Mere conjecture cannot save Gonzalez's HBOR claim based on section 2923.5 to survive dismissal.

Gonzalez also argues Rushmore violated HBOR by engaging in dual-tracking (i.e., simultaneously pushing the home through foreclosure while Gonzalez's loan modification application was pending), (Opp'n 6.), but Gonzalez's dual-tracking claim is factually deficient as well.

HBOR provides: "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." Cal. Civ. Proc. Code §

2923.6(c). If a complete application has been submitted, a trustee may not conduct a trustee's sale until one of the following occurs: "(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification . . . (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer. (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification." Cal. Civ. Proc. Code § 2923.6(c)(1)–(3).

In support of his dual-tracking claim, Gonzalez makes the conclusory assertion that Rushmore proceeded "with foreclosure activities in 2015" although "his modification application was still pending in 2015." (Opp'n 6.) This simply paraphrases the language of the statute; it provides no facts at all as to the specific loan modification application that Gonzalez may have submitted to Rushmore or an attempted foreclosure sale, and thus does not show how Rushmore violated section 2923.6.

For these reasons, the Court dismisses Gonzalez's HBOR claims without leave to amend.

**E.    Constitutional Violations (Eleventh Cause of Action)**

Gonzalez's eleventh cause of action alleges that Rushmore violated his right to due process and equal protection under the Fourth and Fourteenth Amendments by offering him a "subpar loan" based on "his ethnicity and disability," and attempting to foreclose on the Property without legal cause to do so. (FAC ¶¶ 32, 33, 120–125.) The Court liberally construes these claims under 42 U.S.C. § 1983, which allows individuals to sue government officials who violate their civil rights while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. To maintain a claim pursuant to § 1983, a plaintiff must establish: (1) the deprivation of any rights, privileges or immunities secured by the Constitution or federal law, (2) by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009).

Rushmore argues that Gonzalez fails to state cognizable constitutional claims because he does not allege any state action. The Court agrees. Purely private conduct, no matter how wrongful, is not covered under § 1983. *See Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 559 (9th Cir. 1974). Gonzalez claims that Rushmore—a private entity—proceeded with foreclosure activities in 2015 and 2016 by placing a lockbox on the Property and declaring that the Property no longer belonged to him. (FAC ¶¶ 32, 33.) The Ninth Circuit has held that there is no state action in circumstances, like here, where there is no "overt official involvement." *Apao v. Bank of N.Y.*, 324 F.3d 1091, 1094-95 (9th Cir. 2002) (holding that with respect to non-judicial foreclosure procedures, there is no state action in either the availability of such private remedies or their enforcement). Further, Gonzalez presents no facts alleging Rushmore offered him subpar lending terms at any point since it began servicing the Loan in 2015.

In sum, Gonzalez's constitutional claims against Rushmore are inadequately pled and are therefore subject to dismissal without leave to amend.

### F. Violation of ADA (Twelfth Cause of Action)

Gonzalez states that he was "not disabled" when he purchased the Property but somehow, he became "disabled and [now] needs surgery on his back." (FAC ¶¶ 106, 128.) He alleges that his disability entitles him to some unspecified protections under the Americans with Disabilities Act (ADA), which he claims Rushmore has never "honored or considered" in servicing his Loan. (FAC ¶ 127.) These bare allegations are clearly insufficient to state a viable ADA claim. In addition, Gonzalez does not oppose Rushmore's Motion on this issue. Thus, the Court will deem this claim abandoned and dismisses it without leave to amend. *See, e.g.*, *Wooten v. Countrywide Home Loans Inc.*, No. CIV S-11-1791 MCE DAD PS, 2012 WL 3463460, at *5 (E.D. Cal. Feb. 1, 2012) ("[P]laintiff's original complaint contains claims which plaintiff did not address in responding to defendants' motions . . . . A failure to oppose a dispositive motion may be construed as abandoning the subject claims.").

### G. Violation of FDCPA (Thirteenth Cause of Action)

Gonzalez alleges that Rushmore violated the Fair Debt Collection Practices Act ("FDCPA") through its alleged foreclosure activities on the Property, including the 2015 lockbox incident and the 2016 bank representative incident. Rushmore argues that Gonzalez's FDCPA claim fails because the FDCPA does not apply to foreclosure activities.

While certain sections of the FDCPA do not apply to foreclosure activities, there can be no question that section 1692f(6) applies. That section provides that a violation occurs by "[t]aking or threatening to take any nonjudicial action to effect dispossession of disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6). Indeed, the Ninth Circuit has held that for purposes of section 1692f(6), a debt collector includes "a person enforcing a security interest." *Dowers v. Nationstar Mortgage, LLC*, 852 F.3d 964, 971 (9th Cir. 2017). Therefore, section 1692f(6) could, in theory, apply to Rushmore's actions involving the alleged foreclosure attempt.

However, even if section 1692f(6) applies to foreclosure activities, Gonzalez fails to sufficiently state a claim that Rushmore did not have a legal right to possession of the Property. In the FAC, Gonzalez merely alleges that he was "subjected to collection calls; solicitations for bank products; has had a lock box placed on his home to force him to pay." (FAC ¶ 132.) Such conclusory allegations cannot survive a motion to dismiss. *See Golden State Warriors*, 266 F.3d at 988.

For these reasons, the Court dismisses Gonzalez's FDCPA claim without leave to amend the FAC to cure the deficiencies described above.

### H. Unfair Competition (Fourth Cause of Action)

Gonzalez's Unfair Competition Law ("UCL") claim is predicated on his other allegations regarding Rushmore's attempted foreclosure activities. To state a valid claim under the UCL, Gonzalez must allege that Rushmore engaged in an "unlawful,

unfair or fraudulent business act or practice." *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 351 (2004). Because the Court finds that Gonzalez has not sufficiently stated a claim regarding the underlying violations related to the foreclosure activities, Gonzalez's UCL claim necessarily fails as well. *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1190-91 (N.D. Cal. 2009). Therefore, the Court GRANTS Rushmore's Motion to Dismiss Gonzalez's UCL claim without leave to amend.

I. **Leave to Amend**

In general, a court should liberally allow a party leave to amend its pleading. *See* Fed. R. Civ. P. 15(a). However, the Court may deny leave to amend where amendment would be futile. *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). When "any amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) (affirming the trial court's denial of leave to amend where plaintiffs could not cure a basic flaw).

The Court dismisses Gonzalez's fourth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth causes of action against Rushmore with prejudice. The Court denies leave to amend these claims as the Court has concluded further amendments would not cure the fatal deficiencies discussed above.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Rushmore's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 82) as follows:

1. The Motion is **GRANTED with PREJUDICE** as to Gonzalez's claims against Rushmore for: (1) quiet title and slander of title; (2) TILA, HOEPA, and RESPA violations; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) constitutional violations; and (6) ADA violations; (7) HBOR violations; (8) FDCPA violations; and (9) UCL violations.

The Court will issue Judgment.

**IT IS SO ORDERED.**

January 9, 2020

　　　　　　　　　　　_____
　　　　　　　　　　　**OTIS D. WRIGHT, II
　　　　　　　　　　　UNITED STATES DISTRICT JUDGE**